[Cite as *State v. Howard*, 2019-Ohio-5357.]

## IN THE COURT OF APPEALS OF OHIO
### SECOND APPELLATE DISTRICT
### MONTGOMERY COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 28328 |
| | : | |
| v. | : | Trial Court Case No. 1998-CR-1345/2 |
| | : | |
| STEPHAN J. HOWARD | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 27th day of December, 2019.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by ANDREW T. FRENCH, Atty. Reg. No. 0069384, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301 West Third Street, 5th Floor, Dayton, Ohio 45422
         Attorney for Plaintiff-Appellee

STEPHAN J. HOWARD, #A374-821, P.O. Box 4501, Lima, Ohio 45802
         Defendant-Appellant, Pro Se

. . . . . . . . . . . . .

FROELICH, J.

{¶ 1} Stephan J. Howard appeals from the trial court's denial of his post-sentence motion to withdraw his guilty pleas. For the following reasons, the trial court's judgment will be affirmed.

## I. Factual and Procedural History

{¶ 2} According to the prosecutor's statements at the plea hearing, on April 15, 1998, Howard and two other individuals went to an apartment on Vernon Drive to commit a robbery. One accomplice, known as Tater, knocked on the apartment door and engaged an occupant in conversation to scope out the apartment. After Tater left, Howard and his co-defendant, Dorian Dorsey, both armed with firearms and with their faces mostly concealed, kicked open the door and entered the apartment. Howard announced to the five occupants in the apartment that it was a robbery. Howard opened fire in the apartment, striking and killing Walker Lee Smith (an occupant) and wounding his co-defendant, Dorsey. (The police later determined that Smith and Dorsey had been shot with the same 9mm weapon.) Some individuals in the apartment returned fire, striking Howard.

{¶ 3} Tater drove Howard and Dorsey to the hospital. Howard gave the police conflicting statements at the hospital, and ultimately admitted that he had gone to the apartment to commit a robbery. Howard and Dorsey each named the other as the shooter. However, occupants of the apartment identified Howard's clothing and, based on the height difference between the individuals involved, placed the 9mm weapon in Howard's hands. One of the apartment's occupants subsequently identified Howard from a photospread.

{¶ 4} Soon thereafter, Howard was indicted on 13 charges: aggravated murder, aggravated burglary, six counts of aggravated robbery, and five counts of felonious assault (deadly weapon); each charge included a firearm specification.    In May 1998, the parties filed a joint request for discovery and acknowledgment of the receipt of the prosecution's provision of discovery to Howard's counsel.

{¶ 5} Howard subsequently moved to suppress the witness's photo identification of him and, in a separate motion, any statements that he (Howard) made to the police. The trial court held hearings on June 18 (statements) and September 4, 1998 (eyewitness identification).    It subsequently overruled the motion related to the statements on September 10, 1998 and the motion related to the identification on December 3, 1998.

{¶ 6} In November 1998, Howard retained counsel, who was substituted for Howard's appointed counsel.    In April 1999, Howard twice sought additional discovery from the State.    His first motion requested 13 enumerated items, many of which related to items discoverable under Crim.R. 16(B).    His second motion requested "the personnel and internal affairs records of all the police officers and/or sheriff's detectives and/or DEA, ATF, and/or FBI agents and any and all law enforcement officers listed in the discovery furnished to the Defendant to date."    Howard also moved for a continuance of the trial date.    On April 23, 1999, the court continued the trial date to June 7, 1999.

{¶ 7} On June 4, 1999, the trial court granted the first motion for discovery, to the extent that the items were discoverable under the Criminal Rules, and it overruled the second motion, stating that "[s]uch records are not part of the materials discoverable under Criminal Rule 16."    The court noted that Howard "may be able to obtain some records under the Ohio Public Records Act."

{¶ 8} On the morning of June 7, 1999, Howard filed a motion "to continue trial date; motion to require State to deliver *Brady* and Rules 12 and 16 material forthwith." However, that same day, Howard withdrew the motion and pled guilty to aggravated murder with a firearm specification (Count 1), four counts of aggravated robbery (Counts 3-6), and three counts of felonious assault (Counts 9, 11, 12). As part of the plea agreement, Count 2 (aggravated burglary), Counts 7 and 8 (aggravated robbery), and Counts 10 and 13 (felonious assault), as well as all firearm specifications except for Count 1, were dismissed. The State indicated at the plea hearing that Howard would agree to provide information regarding the circumstances surrounding Smith's death, including providing testimony if called to do so by the State. The prosecutor further indicated that the State would recommend a three-year sentence for the felonious assault and aggravated robbery charges, to run concurrently with each other, but consecutively to the life sentence for aggravated murder and the firearm specification. The court clarified that, under the parties' proposed sentence, Howard would be required to serve 26 years before he would be eligible for parole.

{¶ 9} After the prosecutor provided a brief statement of the facts underlying the charges (summarized above), defense counsel indicated that the plea agreement was the result of "strenuous plea bargaining," that Howard's version of events was not entirely consistent with the facts as provided by the prosecutor, and that "[t]here were some things upon which reasonable minds will differ." Nevertheless, defense counsel noted that Howard had already entered his guilty pleas and "[w]e stand on our plea."

{¶ 10} Following the Crim.R. 11 colloquy and consistent with the parties' agreement, the trial court immediately sentenced Howard to life in prison (with eligibility

for parole after 20 years) for the aggravated murder and three years for each of the remaining counts, to be served concurrently with each other, but consecutively to the aggravated murder sentence. The court also imposed an additional three years for the firearm specification, to be served consecutively to and prior to the other sentences. Howard's aggregate sentence was 26 years to life in prison. The trial court advised Howard that he would be subject to post-release control for each of the offenses. Howard did not object to the sentence.

{¶ 11} The court filed its judgment entry on June 11, 1999. The prison sentence was consistent with the court's oral pronouncement. With respect to post-release control, the judgment stated, "Following the defendant's release from prison, the defendant will/may serve a period of post-release control under the supervision of the parole board[.]"

{¶ 12} Howard did not appeal his convictions.

{¶ 13} In February 2004, Howard filed a petition for post-conviction relief.[1] The trial court granted summary judgment for the State on the ground that the petition was untimely and the untimeliness was not excused. We affirmed the trial court's judgment. *State v. Howard*, 2d Dist. Montgomery No. 20457, 2005-Ohio-54.

{¶ 14} On December 11, 2018, Howard moved to withdraw his guilty pleas and to vacate the "void post release control sentence." With respect to his motion to withdraw his pleas, Howard argued that there were insufficient facts to support his convictions, that the photograph lineup was impermissibly suggestive, that he was not allowed to plead no contest, that his trial and appellate counsel rendered ineffective assistance, that the

---

[1] The petition is not in the record before us.

State's version of events at the plea hearing was materially false, and that his ability to prepare for trial was hampered by the State's failure to provide full and fair discovery. Howard further claimed that the trial court erred in advising him regarding post-release control as to the aggravated murder charge. Howard supported his motion with his own affidavit, a copy of the docket sheet, a transcript of the plea hearing, and a police report for the incident.

{¶ 15} The trial court denied the motion to withdraw the pleas without a hearing. The court characterized Howard's motion as raising four allegations of manifest injustice: (1) the evidence did not support his conviction, (2) the State failed to provide discovery, which led to ineffective assistance of counsel, (3) his pleas were not voluntary, because the State would not allow him to plead no contest, and (4) his pleas generally were not knowing, intelligent, and voluntary. With regard to the first allegation, the trial court concluded that it "was not required to determine whether the evidence supported a conviction for aggravated murder or a lesser offense pursuant to Crim.R. 11(C)(3) and Defendant's sufficiency of the evidence argument was waived by the entry of Defendant's pleas." The court concluded that Howard's additional arguments were barred by res judicata. The court further concluded, alternatively, that Howard's second allegation was waived by his guilty pleas and there was no evidence that his counsel's performance was deficient, that Howard's pleas were not involuntary due to the mere fact that his decision to enter a guilty plea was a difficult one, and that the record did not support Howard's claim that his pleas were not made knowingly, intelligently, and voluntarily.

{¶ 16} As to the imposition of post-release control, the trial court agreed that it had erroneously imposed post-release control for the aggravated murder count, and it vacated

that order.

{¶ 17} Howard, pro se, appeals from the denial of his motion to withdraw his pleas, raising six assignments of error on appeal.[2]   His assignments of error claim: (1) the trial court erred in failing to conduct a hearing on the motion to withdraw his pleas, (2)  insufficient facts existed to support his convictions, (3) he was denied the effective assistance of counsel, because "the denial of a full and fair *Brady* discovery obstructed his trial counsel's ability to provide appellant Howard an adequate defense," (4) the void post-release control advisement mandates that his pleas be withdrawn, as a matter of law, (5) he was denied due process by the trial court's use of a nunc pro tunc entry to deny his motion to withdraw his guilty pleas and its failure to conduct a hearing, and (6) Howard's right to be present for a critical stage of the criminal proceedings was violated when he was absent from the hearing on the motion to suppress the identification.

{¶ 18} Howard's arguments in support of his assignments of error are somewhat unclear and do not necessarily correspond to the assignment of error raised.   For simplicity, we will focus on the issues raised in Howard's appellate brief, rather than the specific language of the assignments of error.

## II. Standard of Review for Post-Sentence Motion to Withdraw Plea

{¶ 19} Under Crim.R. 32.1, a trial court may permit a defendant to withdraw a plea after imposition of sentence only to correct a manifest injustice.   Crim.R. 32.1; *State v. Wilson,* 2d Dist. Montgomery No. 26354, 2015-Ohio-1584, ¶ 16.   "A 'manifest injustice' comprehends a fundamental flaw in the path of justice so extraordinary that the defendant could not have sought redress from the resulting prejudice through another form of

---

[2] On May 20, 2019, we permitted Howard to file a delayed appeal.

application reasonably available to him or her." *State v. Brooks*, 2d Dist. Montgomery No. 23385, 2010-Ohio-1682, ¶ 8, citing *State v. Hartzell*, 2d Dist. Montgomery No. 17499, 1999 WL 957746 (Aug. 20, 1999).

**{¶ 20}** Withdrawal of a plea after sentencing is permitted only in the most extraordinary cases. *State v. Jefferson*, 2d Dist. Montgomery No. 26022, 2014-Ohio-2555, ¶ 17, citing *State v. Smith*, 49 Ohio St.2d 261, 264, 361 N.E.2d 1324 (1977). "The defendant bears the burden of establishing the existence of a manifest injustice, and whether that burden has been met is an issue within the sound discretion of the trial court." *Wilson* at ¶ 18.

### III. Timeliness of Howard's Motion

**{¶ 21}** At the outset, Howard filed his motion to withdraw his pleas in December 2018, which was 19½ years after he pled guilty. "Crim.R. 32.1 places no temporal limitation on the ability of courts to 'correct manifest injustice' by setting aside a conviction after a sentence and permitting the defendant to withdraw his or her plea." *State v. Ward*, 10th Dist. Franklin No. 15AP-794, 2016-Ohio-216, ¶ 7, quoting *State v. Bush*, 96 Ohio St.3d 235, 2002-Ohio-3993, ¶ 14. However, as we recently stated in *State v. Johnston*, 2d Dist. Miami No. 2018-CA-26, 2019-Ohio-4296:

> "[A]n undue delay between the occurrence of the alleged cause of a withdrawal of a guilty plea and the filing of a Crim.R. 32 motion is a factor adversely affecting the credibility of the movant and militating against the granting of the motion." *State v. Harden*, 2d Dist. Montgomery No. 22839, 2009-Ohio-3431, ¶ 7, citing *Smith*, 49 Ohio St.2d 261, 361 N.E.2d 1324. "The more time that passes between the defendant's plea and the filing of

the motion to withdraw it, the more probable it is that evidence will become stale and that witnesses will be unavailable." *State v. Francis*, 104 Ohio St.3d 490, 2004-Ohio-6894, 820 N.E.2d 355, ¶ 40. "The state has an interest in maintaining the finality of a conviction that has been considered a closed case for a long period of time." *Id.* "It is certainly reasonable to require a criminal defendant who seeks to withdraw a plea to do so in a timely fashion rather than delaying for an unreasonable length of time." *Id.*

*Johnston* at ¶ 25.

{¶ 22} Howard has not explained the extensive delay between the entry of his guilty pleas and the filing of his motion, and the bases for his motion all relate to matters of which he was aware or should have been aware at the time of his pleas. Moreover, there is a substantial likelihood that critical evidence related to the shooting is no longer available, thus causing significant prejudice to the State. In short, the lengthy undue delay weighs heavily against a finding of the existence of a manifest injustice in this case.

## IV. Voluntariness of Howard's Pleas

{¶ 23} In his first assignment of error, Howard primarily raises that his pleas were not made knowingly, intelligently, and voluntarily. He states that the trial court failed to comply with Crim.R. 11 and that his guilty pleas were involuntary because he wanted to plead no contest, but the State would not permit such a plea.

{¶ 24} Crim.R. 11(C)(2) requires a trial court to address the defendant personally and (a) determine that the defendant is making the plea voluntarily, with an understanding of the nature of the charges and the maximum penalty, and, if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions;

(b) inform the defendant of and determine that the defendant understands the effect of the plea of guilty and that the court, upon acceptance of the plea, may proceed with judgment and sentencing; and (c) inform the defendant and determine that he or she understands that, by entering the plea, the defendant is waiving the rights to a jury trial, to confront witnesses against him or her, to have compulsory process for obtaining witnesses, and to require the State to prove guilt beyond a reasonable doubt at a trial at which he or she cannot be compelled to testify against himself or herself. *State v. Brown*, 2d Dist. Montgomery No. 21896, 2007-Ohio-6675, ¶ 3.

{¶ 25} The Supreme Court of Ohio has urged trial courts to comply literally with Crim.R. 11. *State v. Clark*, 119 Ohio St.3d 239, 2008-Ohio-3748, 893 N.E.2d 462, ¶ 29. The trial court must comply strictly with Crim.R. 11(C)(2)(c), as it pertains to the waiver of federal constitutional rights. *Id.* at ¶ 31. However, because Crim.R. 11(C)(2)(a) and (b) involve non-constitutional rights, the trial court need comply only substantially with those requirements. *E.g., State v. Bishop*, 156 Ohio St.3d 156, 2018-Ohio-5132, 124 N.E.3d 766, ¶ 11. "Substantial compliance means that under the totality of the circumstances the defendant subjectively understands the implications of his plea and the rights he [or she] is waiving." *State v. Nero*, 56 Ohio St.3d 106, 108, 564 N.E.2d 474 (1990).

But "[w]hen the trial judge does not *substantially* comply with Crim.R. 11 in regard to a nonconstitutional right, reviewing courts must determine whether the trial court *partially* complied or *failed* to comply with the rule." (Emphasis sic.) *Clark*, 119 Ohio St.3d 239, 2008-Ohio-3748, 893 N.E.2d 462, at ¶ 32. "If the trial judge partially complied, e.g., by mentioning mandatory postrelease control without explaining it, the plea may be

vacated only if the defendant demonstrates a prejudicial effect."  *Id.*   But if the trial court completely failed to comply with the rule, the plea must be vacated.  *Id.*   Complete failure " 'to comply with the rule does not implicate an analysis of prejudice.' "  *Id.*, quoting *State v. Sarkozy*, 117 Ohio St.3d 86, 2008-Ohio-509, 881 N.E.2d 1224, ¶ 22.

*Bishop* at ¶ 19. *See also State v. McGlinch*, 2019-Ohio-1380, __ N.E.3d __, ¶ 28 (2d Dist.).

{¶ 26} A trial court's failure to comply with the requirements of Crim.R. 11(C) is a defect that may be the subject of a merit appeal which supports reversal of a defendant's conviction.  *State v. Minkner*, 2d Dist. Champaign No. 2009 CA 16, 2009-Ohio-5625, ¶ 31; *State v. Ballard*, 66 Ohio St.2d 473, 423 N.E.2d 115 (1981).   "Even when a timely appeal is not taken, a delayed appeal is available pursuant to App.R. 5(A), upon a proper showing.   Therefore, a court's failure to comply with the requirements of Crim.R. 11(C) is not an extraordinary circumstance demonstrating a form of manifest injustice required for Crim.R. 32.1 relief."   *State v. Hartzell*, 2d Dist. Montgomery No. 17499, 1999 WL 957746 (Aug. 20, 1999).

{¶ 27} Nevertheless, we have reviewed the transcript of the plea hearing, which was held on June 7, 1999.   The trial court told Howard that his guilty pleas would waive "a number of constitutional rights," and it informed Howard of the constitutional rights that he was waiving, as set forth in Crim.R. 11(C)(2)(c).   Howard indicated that he understood. (Plea Tr. at 6-7.)   The record thus reflects that the trial court strictly complied with its obligations under Crim.R. 11(C)(2)(c).

{¶ 28} As to the trial court's obligations under Crim.R. 11(C)(2)(a)-(b), the plea

hearing transcript shows that the prosecutor, at the trial court's request, articulated the elements of the offenses of aggravated murder, aggravated robbery, and felonious assault, as well as the firearm specification, and the court informed Howard of the sentences it could impose. The written plea forms, which Howard had read and signed, also indicated the possible sentences that he could receive, as well as the parties' agreed sentence. Although the trial court did not inform Howard that his guilty plea was a complete admission of guilt, his plea forms stated that he understood the effect of his plea and that the court, "upon acceptance of my plea(s), may proceed with judgment and sentence." We find no material defect in the plea hearing or any indication in the record that Howard did not subjectively understand the implications of his pleas.

{¶ 29} Toward the end of the plea hearing, the trial court asked Howard how he wished to plead to aggravated murder, four counts of aggravated robbery, and three counts of felonious assault. Howard responded:

THE DEFENDANT: Since the State wouldn't let me plead no contest, I would like to plead guilty.

THE COURT: Are you doing this voluntarily?

THE DEFENDANT: Yes.

THE COURT: You have had enough time to talk to [defense counsel]?

THE DEFENDANT: Yes.

THE COURT: All right. You have signed these three plea forms. I have gone through them with you. I will ask you again, do you want to take your signature back and have us go to trial tomorrow?

THE DEFENDANT: No.

(Plea Tr. at 14-15.)

{¶ 30} Howard's exchange with the trial court possibly reflects that he did not receive from the State all of the plea terms that he wanted. It further reflects, however, that Howard voluntarily agreed to plead guilty, despite his desire to enter a no contest plea. As stated by the trial court, the fact that Howard faced a difficult decision to enter a guilty plea when he preferred a no contest plea did not render his pleas involuntary, and it did not create a manifest injustice warranting the vacation of his pleas.

## V. Facts Supporting Conviction

{¶ 31} In his second assignment of error, Howard claims that his pleas should have been withdrawn, because there were insufficient facts to support his convictions. Specifically, he claims that the "underlying facts of the case" did not support the statutory elements for "purposeful intent" and "prior calculation and design" related to the aggravated murder charge, as well as the other charged felonies. Howard emphasizes that the identification of him by Brian Foster, a witness, was due to an "impermissibly suggestive photographic identification process" and that other eyewitnesses were not credible.

{¶ 32} The State is not required to articulate at the plea hearing the factual basis for a felony guilty plea. *State v. Dotson*, 2d Dist. Miami No. 2018-CA-25, 2019-Ohio-2032, ¶ 26. As a general rule, "[a] guilty plea admits the facts set forth in the indictment, not the [underlying] facts set forth at the plea hearing." *State v. Riddle*, 2017-Ohio-1199, 88 N.E.3d 475, ¶ 34 (2d Dist.), quoting *State v. Greathouse*, 158 Ohio App.3d 135, 2004-Ohio-3402, 814 N.E.2d 502, ¶ 8 (2d Dist.). Pleading guilty is "an admission of every material fact well pleaded in the indictment, dispensing with the necessity of proving them,

and authorizing the court to proceed to judgment." (Citations omitted.) *Dotson* at ¶ 26. When a defendant "has been informed of the charge in the indictment and has had a full opportunity to discuss that charge with his attorney, slight variations in the description of the offense at the plea hearing" will not support a presumption that the defendant did not understand the nature of the charges against him. *Riddle* at ¶ 39, quoting *Greathouse* at ¶ 8.

{¶ 33} At the plea hearing, the prosecutor, at the court's request, provided the statutory elements of the offenses to which Howard was pleading guilty. The prosecutor also provided a statement of facts, which indicated that Howard and two accomplices went to an apartment to commit a robbery. After one accomplice cased the apartment, Howard and his co-defendant entered the apartment, armed and with their faces mostly concealed. Howard announced that this was a robbery, and he ordered the occupants to "give it up" and to "get on the ground." Howard then opened fire in the apartment. In the following exchange of gunfire, Howard struck two individuals (Smith and Dorsey) and caused the death of Smith. Howard also was injured by return gunfire. The prosecutor's statement discussed the identification of Howard as the shooter.

{¶ 34} Following the prosecutor's statement of facts, the trial court asked:

THE COURT: Does the defendant admit what has been told to me by the prosecutor?

[DEFENSE COUNSEL:] Well, Your Honor, my client already entered his plea in this matter. I do have to tell you that the pleas are a result of very strenuous plea bargaining in connection with this case. There were some things upon which reasonable minds will differ, and our version of the events

is not (indiscernible) with the version that will be read by (indiscernible). We stand on our plea.

THE COURT: Anything he wants to present in opposition now?

[DEFENSE COUNSEL:] That is right and there is nothing that we have (indiscernible) of the plea bargain. We have nothing to put in opposition, Your Honor.

(Plea Tr. at 19.) The record thus reflects that Howard continued with his guilty pleas to aggravated murder, aggravated robbery, and felonious assault, despite the fact that he may not have agreed entirely with the State's version of the events at the apartment.

{¶ 35} In another portion of his appellate brief, Howard disputes that he possessed a 9mm weapon, that he kicked open the door to the residence, and that a ballistic report showed that the bullets recovered from the decedent matched a 9mm that Howard possessed (Howard claims that no 9mm was ever recovered). He further contends that the police failed to conduct ballistic tests on weapons possessed by the apartment's occupants and that the State's witnesses were not credible. None of Howard's claims is borne out by the record, and Howard has not claimed and provided evidence that he is actually innocent of the charges. The mere fact that Howard might have been able to challenge some of the State's evidence had he elected to go to trial does not create a manifest injustice.

## VI. Alleged Discovery Violations

{¶ 36} In his third assignment of error, Howard argues that the State's failure to provide full and fair discovery impeded his counsel's ability to investigate and prepare for trial, resulting in ineffective assistance of counsel.

{¶ 37} In May 1998, the prosecutor and defense counsel filed a document in which (1) defense counsel requested that the State "provide the defense with full discovery under Ohio Criminal Rule 16(B) and the Montgomery County Common Pleas Court Management Plan," (2) defense counsel acknowledged receipt of the prosecutor's information packet, and (3) the prosecutor requested, and defense counsel agreed to furnish, full reciprocal discovery under Crim.R. 16(C) and the court's management plan.

{¶ 38} Howard's replacement counsel filed a demand for discovery on April 2, 1999, and a request for additional discovery on April 13, 1999.   As stated above, the April 2 discovery demand requested 13 enumerated items, many of which related to items discoverable under Crim.R. 16(B).   The April 13 motion requested "the personnel and internal affairs records of all the police officers and/or sheriff's detectives and/or DEA, ATF, and/or FBI agents and any and all law enforcement officers listed in the discovery furnished to the Defendant to date."   On June 4, 1999, the trial court granted the April 2 demand for discovery to the extent that the requested items were discoverable under Ohio's Rules of Criminal Procedure, and it denied the April 13 motion.

{¶ 39} On June 7, the scheduled trial date, Howard's counsel sought a continuance of the trial and moved for the State to deliver *Brady* material and other items to defense counsel forthwith.   Specifically, counsel sought personnel and internal affairs records of all law enforcement officers who would testify, photographs of Howard's injuries, any ballistic or laboratory reports pertaining to the bullets or weapons involved, and statements by Dorsey made subsequent to his plea.   Defense counsel withdrew this motion at the plea hearing.

{¶ 40} Based on the record, Howard elected to enter his guilty plea knowing that

the State allegedly had not fully complied with its obligations to provide discovery. Under these circumstances, we cannot conclude that the State's alleged failure to provide complete discovery created a manifest injustice that warranted the withdrawal of Howard's plea.

{¶ 41} Howard further claims that his counsel rendered ineffective assistance due to the lack of complete discovery. Ineffective assistance of counsel can provide a basis for seeking a post-sentence withdrawal of a guilty plea. *Wilson*, 2d Dist. Montgomery No. 26354, 2015-Ohio-1584, at ¶ 17. "When the alleged error underlying a motion to withdraw a guilty plea is ineffective assistance of counsel, the defendant must show that (1) trial counsel's performance was deficient; and (2) there is a reasonable probability that, but for counsel's errors, the defendant would not have entered a plea." *Id.; see Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

{¶ 42} On this record, we have no basis to conclude that defense counsel acted deficiently in allowing Howard to accept the State's plea offer, even without complete discovery. Had Howard gone to trial, he would have risked lengthy sentences on each of the non-murder offenses. Moreover, we can only speculate whether the missing discovery would have significantly strengthened or altered Howard's defense. We cannot conclude, with the facts before us, that the alleged lack of complete discovery caused counsel to provide ineffective assistance and created a manifest injustice.

### VII. Improper Notification of Post-release Control/ Lack of Hearing

{¶ 43} Howard's fourth and fifth assignments of error raise that the trial court should have granted a hearing on his motion to withdraw his pleas, because the imposition of post-release control for aggravated murder was void and resulted in a

manifest injustice. At the plea hearing, the trial court informed Howard that he would be "on post-release control for a period up to five years" for the aggravated murder and aggravated robberies. The court further stated that he would subject to post-release control "for up to three years" for felonious assault.[3]

{¶ 44} "Post-release control" involves a period of supervision by the Adult Parole Authority after an offender's release from prison that includes one or more post-release control sanctions imposed under R.C. 2967.28. R.C. 2967.01(N). Post-release control is mandatory for some offenses and is imposed at the discretion of the Parole Board for others, depending on the nature and degree of the offense. R.C. 2967.28(B) and (C).

{¶ 45} If a defendant has committed an offense subject to post-release control under R.C. 2967.28, the trial court must notify the defendant at sentencing of the post-release control requirement and the consequences if the defendant violates post-release control. R.C. 2929.19; *State v. Qualls*, 131 Ohio St.3d 499, 2012-Ohio-1111, 967 N.E.2d 718, ¶ 18. It is well-established that when a judge fails to impose the required postrelease control as part of a defendant's sentence, "that part of the sentence is void and must be set aside." (Emphasis sic.) *State v. Fischer*, 128 Ohio St.3d 92, 2010-Ohio-6238, 942 N.E.2d 332, ¶ 26; *see also State v. Holdcroft*, 137 Ohio St.3d 526, 2013-Ohio-5014, 1 N.E.3d 382, ¶ 7. The improper post-release control sanction "may be reviewed at any time, on direct appeal or by collateral attack." *Fischer* at ¶ 27. However, res judicata still applies to all other aspects of a conviction, including the determination of guilt and the lawful elements of the sentence. *Id.* at ¶ 40; *Boyd v. State*, 2d Dist. Montgomery

---

[3] Howard has not raised, in his motion or on appeal, whether the trial court properly imposed post-release control for the aggravated robbery and felonious assault charges. Accordingly, that issue is not before us, and we will not address it.

No. 27553, 2018-Ohio-108, ¶ 33.

{¶ 46} Individuals convicted of unclassified felonies, such as aggravated murder, are not subject to post-release control. *See, e.g., McCain v. Huffman*, 151 Ohio St.3d 611, 2017-Ohio-9241, 91 N.E.3d 749, ¶ 3; *State v. Lawrence*, 2d Dist. Montgomery No. 24513, 2011-Ohio-5813, ¶ 6. Instead, when a person convicted of an unclassified felony is released from prison, that person is subject to parole. *State v. Clark*, 119 Ohio St.3d 239, 2008-Ohio-3748, 893 N.E.2d 462, ¶ 36; R.C. 2967.13. The trial court is not required to notify a defendant about parole supervision. *See State v. Hibbler*, 2d Dist. Clark No. 2019-CA-19, 2019-Ohio-3689, ¶ 16.

{¶ 47} The Ohio Supreme Court has held that the trial court may correct the improper imposition of post-release control on a murder charge by means of a nunc pro tunc entry and that no resentencing hearing is required. *State ex rel. Roberts v. Marsh*, 156 Ohio St.3d 440, 2019-Ohio-1569, 128 N.E.3d 222, ¶ 10-11. The supreme court explained that "no resentencing hearing was required in the situation here, because the trial court simply deleted a postrelease-control provision that should not have been included in the initial sentence entry." *Id.* at ¶ 11.

{¶ 48} Under the facts of this case, we find no manifest injustice from the trial court's improper notification that Howard would be subject to post-release control on the aggravated murder charge. Before taking Howard's plea, the trial court made clear that Howard would be eligible for parole after serving 20 years for the murder, and "if he received parole right away, then it might then be that the number of years he served would be the 26. If he did not receive parole right away, then it could be a longer time." (Plea Tr. at 4.) We see nothing in the record or in Howard's motion to indicate that the trial

court's improper notification of post-release control on the murder charge and the trial court's vacation of that improper obligation created a manifest injustice that warranted the vacation of Howard's plea.

{¶ 49} Howard incorrectly claims that the trial court could not correct the erroneous imposition of post-release control for the aggravated murder by way of a nunc pro tunc entry. To the contrary, a trial court is authorized to remove the improper imposition of post-release control through a nunc pro tunc entry. Regardless, although the trial court granted the motion to vacate the void post-release control obligation for aggravated murder, the court has not yet issued a nunc pro tunc judgment entry.

### VIII. Howard's Presence at Suppression Hearings

{¶ 50} Finally, Howard claims in his sixth assignment of error that he was denied his due process right to be present during all stages of the criminal proceeding. Specifically, he claims that he was not allowed to appear at a hearing on the motions to suppress.

{¶ 51} A criminal defendant has a right pursuant to the Fourteenth Amendment to be present at every "critical stage" of his trial. *State v. Campbell*, 90 Ohio St.3d 320, 346, 738 N.E.2d 1178 (2000), citing *Snyder v. Massachusetts*, 291 U.S. 97, 54 S.Ct. 330, 78 L.Ed. 674 (1934); *State v. Al-Mosawi*, 2d Dist. Montgomery No. 24633, 2012-Ohio-3385, ¶ 19, citing *State v. Hale*, 119 Ohio St.3d 118, 2008-Ohio-3426, 892 N.E.2d 864, ¶ 100. *See also* Crim.R. 43. "A hearing on a motion to suppress evidence where the testimony of a witness is received is a critical stage of the proceedings that requires the presence of the defendant." *State v. Gangloff*, 1st Dist. Hamilton Nos. C-060481, C-060536, 2007-Ohio-4463, ¶ 7.

{¶ 52} "An accused's absence, however, does not necessarily result in prejudicial or constitutional error." *State v. Davis*, 116 Ohio St.3d 404, 2008-Ohio-2, 880 N.E.2d 31, ¶ 90. "[T]he presence of a defendant is a condition of due process to the extent that a fair and just hearing would be thwarted by his absence, and to that extent only." *Id.*, quoting *Snyder v. Massachusetts*, 291 U.S. 97, 107-108, 54 S.Ct. 330, 78 L.Ed. 674 (1934), *overruled on other grounds*, *Duncan v. Louisiana*, 391 U.S. 145, 154, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968); *State v. Hare*, 2018-Ohio-765, 108 N.E.3d 172 (2d Dist.). Moreover, "[c]ounsel is permitted to waive the client's right to be present." *State v. Beasley*, 153 Ohio St.3d 497, 2018-Ohio-493, 108 N.E.3d 1028.

{¶ 53} Howard's affidavit in support of his motion to withdraw his pleas does not claim that he was not present for any hearings on the motion to suppress. Rather, he points to the trial court's docket and the absence of a transportation fee statement.

{¶ 54} On June 18, 1998, the trial court held a hearing on Howard's motion to suppress the statements he made to law enforcement. On June 19, 1998, the Sheriff's Office filed a fee statement for its transportation of a prisoner to court. The statement included the court and assigned judge, the case number (98 CR 1345/2), the defendant's name (Stephan Howard), the purpose (motion to suppress hearing) and the fee ($3). This fee statement suggests that sheriff deputies transported Howard to court for the June 18 motion to suppress hearing.

{¶ 55} It appears that an additional hearing related to the statements Howard made at the hospital was scheduled for July 1, 1998, due to defense counsel's desire to obtain Howard's medical records. At defense counsel's request, the hearing was continued until July 15, with a back-up date of July 24. Defense counsel subsequently asked that

matter be reset to July 24, 1998; that motion also was granted. There is no indication in the record that this additional hearing was ever held.

{¶ 56} After Howard filed a motion to suppress the identification by a witness (Brian Foster), the trial court set a hearing for August 27, 1998. The record contains a subpoena for Foster to appear at an August 27 hearing on a motion to suppress photo identification. Moreover, on August 28, 1998, the Sheriff's Office filed a fee statement for its transportation of a prisoner to court. The statement included the court and assigned judge, the case number (98 CR 1345), the defendant's name (Howard), the purpose (motion to suppress) and the fee ($3). However, subsequent filings by the State and the trial court indicate that the motion to suppress hearing did not proceed on August 27, 1998.

{¶ 57} Foster subsequently was subpoenaed to appear at a September 4, 1998 hearing on Howard's motion to suppress photo identification. The record does not contain a transportation fee statement for September 4, 1998, suggesting that Howard was not present at the hearing. The State's subsequent memorandum in opposition to Howard's motion to suppress the identification confirmed Howard's absence, but stated:

A hearing on said Motion was held on September 4, 1998. The Defendant asked and was granted permission to waive his physical presence at the hearing. The State presented the testimony of Brian Foster and Detective A. D. Burke of the Dayton Police Department. The Defendant presented no evidence.

{¶ 58} The record does not contain transcripts of any hearing on Howard's motions to suppress.

{¶ 59} With the record before us, we find no manifest injustice based on Howard's alleged absence from hearings on his motions to suppress. The record indicates that Howard was present for the June 18 hearing, and that he waived his presence for the September 4, 1999 hearing.

## IX. Conclusion

{¶ 60} Based on our foregoing discussion, Howard's assignments of error are overruled. Accordingly, the trial court's judgment will be affirmed.

. . . . . . . . . . . . .

HALL, J. and TUCKER, J., concur.

Copies sent to:

Mathias H. Heck
Andrew T. French
Stephan J. Howard
Hon. Steven K. Dankof